IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW HERNANDEZ and WILAIRAT "TUCKEY" HERNANDEZ,<br><br>    Plaintiffs,<br><br>v.<br><br>ADRIAN RICHARDS, *et al.*,<br><br>    Defendants. | Case No. 1:25-cv-04763-ELR<br><br>Jury Trial Demanded |

**REPLY IN SUPPORT OF STEPHANIE V. BLANK CENTER FOR SAFE AND HEALTHY CHILDREN, INC., AND CHILDREN'S HEALTHCARE OF ATLANTA INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

In responding to CHOA and SVBC's motion for judgment on the pleadings, Plaintiffs offer little more than bare assertion. They cite no legal authority for any proposition in their response, and they certainly present none which contradicts Defendants' arguments. And where Plaintiffs gesture at a point of law, their assertions miss the mark. In short, Plaintiffs' response does nothing to defeat the merits of Defendants' motion, so the Court should grant judgment on the pleadings and dismiss Plaintiffs' claims against these Defendants.

# ARGUMENT

**I.   Plaintiffs fail to state a claim against these Defendants, primarily because Plaintiffs' claims are time-barred.**

Plaintiffs offer several theories to avoid dismissal of their claims against Defendants. None of them should persuade, as they variously get the law wrong or ignore whole aspects of Defendants' arguments.

   **A.   Plaintiffs decline to contest many of Defendants' arguments for dismissal.**

As an initial matter, Plaintiffs' response offers no opposition at all to several points regarding the sufficiency of their complaint.

For example, Plaintiffs never contest that there is no basis for holding these Defendants' vicariously liable under § 1983. [See Doc. 25 at 7-8.] As Defendants explained, Plaintiffs are required to show that these Defendants (private corporations) *themselves* acted under the color of state law, such that these Defendants directly had an agreement to deprive Plaintiffs of their constitutional rights, and Plaintiffs must do more than present bare allegations of a conspiracy in order to do so. See Univ. of Chicago Med. Ctr., 107 F.4th 752, 758 (7th Cir. 2024). Plaintiffs have never offered anything more than a bare allegation of conspiracy, offering no facts to show how there was a real agreement, rather than a common goal of seeking to prevent child abuse. [See Doc. 1-1 at ¶ 160.] So, Plaintiffs' § 1983

claims against these Defendants necessarily fail. Plaintiffs decline to contest this point, warranting dismissal.

Considering Plaintiffs' state law claims, Plaintiffs also decline to defend the plausibility of their false imprisonment claim. As Defendants explained, Plaintiffs never allege how *these Defendants* (through various individual defendants) actually imprisoned anyone. [See Doc. 25 at 13-14.] Rather, Plaintiffs' solely alleged that Defendants' employees made an incorrect diagnosis, which, when provided to law enforcement, happened to lead officers to pursue charges against Plaintiffs. [Doc. 1-1 at ¶¶ 170-71.] Plaintiffs' claims based on the acts of Ms. Wiggins and Dr. Pena are even more attenuated, as the only acts Plaintiffs describe by them occurred *after* DFCS and the Sherriff's Department had begun investigating and removed the children from the home. [Id. at ¶¶ 33-36, 42, 46, 52.] Such circumstances cannot support a false imprisonment claim as a matter of law. See McClendon v. Harper, 349 Ga. App. 581, 586-87 (2019). Because Plaintiffs do not state a plausible claim for false imprisonment against these Defendants and never try to explain how they did, the Court should dismiss Count 7 as to these Defendants.

Similarly, Plaintiffs' response never meaningfully defends the timeliness of their defamation claim. At most, Plaintiffs make a throwaway comment—citing no authority—that "continuing violations or publication of false statements resets any defamation cause of action." [Doc. 31 at 2.] But Plaintiffs never assert any

"continuing" defamation or subsequent publication of false statements. The only defamatory statements they allege were the report of suspected child abuse by Dr. Messner on June 6, 2023, or by Dr. Pena on June 23, 2023. [Doc. 1-1 at ¶¶ 34, 77, 174-76.] A defamation claim accrues at the time of the alleged defamatory act. See, e.g., Chisholm v. Tippens, 289 Ga. App. 757, 762 (2008). Thus, the limitations period for a defamation claim against these Defendants expired, at the latest, on June 23, 2024. Plaintiffs' never substantively contest that point, so the Court should dismiss Count 8 as time-barred as to these Defendants.

**B.    The points Plaintiffs do contest fail to avoid dismissal.**

As for the responses Plaintiffs do offer, they fail to ward off judgment on the pleadings here.

**1. Plaintiffs misapply the discovery rule.**

First, Plaintiffs claim that they "could not have known that Defendants' diagnosis and report were false" until after they were prosecuted, so their claims are not considered to accrue until then. [Doc. 32 at 4.] But despite asserting a variety of claims against Defendants (§ 1983 claims, false imprisonment, defamation, and medical malpractice), Plaintiffs never try to explain how the discovery rule might work differently for the acts and harms at issue in those claims. This is because the discovery rule *does not* work the way Plaintiffs claim.

4

For Plaintiffs' § 1983 claims, those claims accrued when Plaintiffs had "a complete and present cause of action." Wallace v. Kato, 549 U.S. 384, 388 (2007). Put differently, the limitations period begins to run "when 'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" Moore v. Chairman, No. 21-13792-F, 2022 WL 1308498, at *1 (11th Cir. Mar. 16, 2022) (citing Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003)). The only alleged deprivation of rights Plaintiffs allege against these Defendants is a violation of the right to parent, resulting in the loss of physical custody of their children. [Doc. 1-1, ¶¶ 139-54.] But that alleged deprivation accrued, at the latest, on June 8, 2023. That was when Emma was discharged from CHOA to someone *other than* Plaintiffs (i.e., denying Plaintiffs' physical custody), based on reported suspicions of child abuse. [Doc. 1-1 at ¶¶ 33-36, 42.] And the CHOA employees allegedly involved in depriving Plaintiffs of their rights had no further involvement in Emma's care after June 8, 2023.[1] Plaintiffs' alleged lack of knowledge is thus implausible on its face, claiming that they somehow did not know of an investigation-triggering allegation of abuse until they were eventually acquitted of criminal charges (rather than, say,

---

[1] Though Dr. Pena made an assessment on June 23, 2023, Plaintiffs never allege that *Dr. Pena* violated their parental rights or imprisoned anyone, as the investigation was already well underway by then. Accordingly, Plaintiffs fail to plausibly demonstrate a basis for holding these Defendants liable for Dr. Pena's actions—another aspect of Defendants' motion which Plaintiffs decline to contest. [Compare Doc. 25 at 12 with Doc. 32 at 2-6.]

while the investigation and alleged deprivation were happening). Accordingly, Plaintiffs' § 1983 claim as to these Defendants accrued, at the latest, on June 8, 2023, more than two years before this action. Plaintiffs' § 1983 claims are time-barred.

Meanwhile, Plaintiffs offer no argument specifically explaining how the discovery rule they assert would apply to their Georgia law claims. For similar reasons to those already discussed, Plaintiffs' alleged lack of discovery is implausible on its face; their discovery of the alleged wrong done to them by these Defendants (and their employees) was immediate. Plaintiffs offer no meaningful argument for how their claims against *these* Defendants accrued any later than June 8, 2023, and avoids the governing statutes of limitations.

Plaintiffs' argument particularly fails to help their negligence claim (Count 9). Plaintiffs' negligence claims against these Defendants primarily allege an erroneous diagnosis of non-accidental trauma resulting from a lack of "adequate diagnostic testing." [Doc. 1-1 at ¶¶ 182-83.] The injury of an alleged misdiagnosis "begins immediately upon the misdiagnosis," rather than upon the later discovery of a proper diagnosis. Stafford-Fox v. Jenkins, 282 Ga. App. 667, 669 (2006). And the date on which a plaintiff learns the true cause of a medical problem does not affect the applicability of Georgia's statute of limitations for medical malpractice (the essence of their claim against these Defendants). See id.

More generally, Plaintiffs' "ignorance of the facts constituting a cause of action does not prevent the running of the statute of limitation." Autumn Trace Homeowners Ass'n, Inc. v. Brooks, 238 Ga. App. 107, 107 (1999). And Georgia's discovery rule is only intended to apply to "cases of bodily injury which develop only over an extended period of time." Id. (claim that association negligently failed to prevent property manager from embezzling funds was time barred, as claim accrued when alleged embezzlement occurred rather than when plaintiffs' discovered it); see also Metlife v. Wright, 220 Ga. App. 827, 827-28 (1996) (same, holding defamation claim time-barred). Plaintiffs' invocation of the discovery rule here is thus misplaced.

### 2. Plaintiffs' arguments about the accrual of malicious prosecution claims are irrelevant as to these Defendants.

Second, Plaintiffs argue (again, without authority) that "a claim for malicious prosecution does not accrue until the criminal proceedings terminate in the plaintiff's favor." [Doc. 32 at 5.] This argument, at most, applies to Count 2 (malicious prosecution), and *maybe* Count 1 (false arrest). [See Doc. 1-1, ¶¶ 127-38.] Yet those counts *solely* allege claims against Adrian Richards, of the Forsyth County Sheriff's Office. [Id.] Because Plaintiffs do not allege any claim for malicious prosecution against *these* Defendants, this argument is irrelevant to these Defendants' motion.

Even to the extent Plaintiffs' argument reaches claims actually asserted against these Defendants, the basis for their causes of action should have been

7

apparent well before their prosecution. Facts which would support Plaintiffs' claims against Defendants arose, at the latest, by June 8, 2023, when Plaintiffs' children were not returned to their home, but placed with relatives. Plaintiffs did not file suit until two years and 15 days after that date. Plaintiffs did not even file suit until more than two years after Plaintiff Tuckey's arrest. To claim now that they did not know the relevant facts about a false report of child abuse until they were acquitted in June 2025 is nonsensical. Plaintiffs' claims are time-barred.

### 3. Plaintiffs' "continuing violation" theory is wrong.

Third, Plaintiffs claim that their § 1983 claims survive because they were part of a "continuing violation," with "ongoing harms" until their acquittal in 2025. [Doc. 32 at 5.] To be clear, Plaintiffs only make this argument to defend their "conspiracy and § 1983" claims—i.e., Counts 3 and 5, as relevant to these Defendants. This argument has nothing to say about the timeliness of their state-law claims (Counts 7, 8, and 9), and Plaintiffs cite no law which might make those claims proper based on a continuing-violation theory. Thus, those counts are due to be dismissed.

Of course, Plaintiffs' theory does not make Counts 3 and 5 viable, either. "The critical distinction in the continuing violation analysis is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (citing Knight v.

8

Columbus, Ga._,_ 19 F.3d 579, 580-81 (11th Cir. 1994)). Here, the alleged acts at issue—the alleged misdiagnosis of non-accidental trauma—constituted a "one time act with continued consequences," so "the limitations period is not extended." Id. Plaintiffs plead nothing which suggests continued deprivations of rights by Defendants' personnel after June 8, 2023—more than two years before this action commenced. Put simply, Plaintiffs fail to plausibly allege any continuing violation by these Defendants.

## II.   Defendants' statutory immunity bars all of Plaintiffs' claims.

Even if Plaintiffs had alleged plausible or timely claims, their claims are still barred by statutory immunity.

### A.   Plaintiffs do not dispute that O.C.G.A. § 19-7-5 bars their state law claims against Defendants.

At the outset, Plaintiffs' response *solely* challenges Defendants' immunity as to their § 1983 claims. [Doc. 32 at 5-6.] In other words, Plaintiffs decline to contest that O.C.GA. § 19-7-5 bars their state-law claims against Defendants. This is unsurprising, as the statute's immunity is broad, protecting reporters from "any civil liability" for reports of suspected child abuse made with "reasonable cause" or in "good faith." See O.C.G.A. § 19-7-5(f), (g); O'Heron v. Blaney, 276 Ga. 871, 873 (2003). Because Plaintiffs' claims against these Defendants arise out of either making a good-faith report of suspected child abuse and providing information in good faith related to an investigation. Plaintiffs' claims are therefore barred.

9

## B. Plaintiffs fail to demonstrate that § 1983 preempts or precludes Defendants' statutory immunity.

Turning to Plaintiffs' narrow argument, they claim that § 1983 preempts Georgia's immunity statute, preventing O.C.G.A. § 19-7-5's application to their federal-law claims. [Doc. 32 at 5-6.] Plaintiffs' argument presumes, however, that applying this statutory immunity conflicts with Congress's intent to impose liability through § 1983. See Felder v. Casey, 487 U.S. 131, 139, 141-42 (1988) (holding that state notice-of-claim statute was preempted by § 1983 because it is "inconsistent with the purposes of the federal statute" and "discriminates against the federal right"). Statutory immunity for good faith reporting of child abuse, however, expressly does *not* conflict with Congress's intent for § 1983.

Defendants' claim of statutory immunity does not conflict with § 1983 because Congress has *itself* provided such immunity against federal claims:

> Notwithstanding any other provision of law, any individual making a good faith report to appropriate authorities of a suspected or known instance of child abuse or neglect, or who otherwise, in good faith, provides information or assistance, including medical evaluations or consultations, in connection with a report, investigation, or legal intervention pursuant to a good faith report of child abuse or neglect shall not be subject to civil liability or criminal prosecution, under any Federal law, rising from making such report or providing such information or assistance.

34 U.S.C. § 20342(1). Plaintiffs' Complaint does not plausibly allege specific acts by these Defendants as entities, instead only alleging acts by their agents for which Plaintiffs claim Defendants are vicariously liable. [See Doc. 1-1 at ¶¶ 117-18, 145-

10

47, 160, 171, 174, 182-83.] Under 34 U.S.C. § 20342, each of those individual defendants cannot be held civilly liable under "*any* Federal law," leaving no basis for holding these Defendants liable.

Georgia's statute is fundamentally similar to the federal immunity statute, indicating that Georgia's immunity tracks what Congress expressly permits. Defendants are thus entitled to statutory immunity on that basis. Moreover, Georgia's immunity tracks *other* federal statutes which demonstrate Congress's intent to curtail liability for those reporting suspected child abuse in good faith. For example, as a precondition for certain child abuse prevention grants, Congress requires states to adopt statutes like O.C.G.A. § 19-7-5, providing "immunity from civil or criminal liability under State and local laws and regulations for individuals making good faith reports of suspected or known instances of child abuse" or assisting investigations pursuant to a good faith report of child abuse. 42 U.S.C. § 5106a(b)(2)(B)(vii). This embrace of broad immunity for good faith reporting suggests that Congress intends to allow such immunity even against § 1983 claims. See Brown v. Newberger, 291 F.3d 89, 94 & n.1 (1st Cir. 2002) (noting § 5106a and cases suggesting that it implies allowance of immunity from § 1983 liability for reports of child abuse).[2]

---

[2] The exception to this intent may be where a state's statutory immunity *exceeds* the scope of the immunity Congress envisions. In Acre v. Children's Hospital Los Angeles, for example, the California Court of Appeal explained that § 5106a suggests that § 1983 defendants could "utilize

Georgia's statute lines up with what Congress requires in § 5106a, providing a broad immunity for reporting or assisting the investigation of child abuse as long as that report or assistance is "made in good faith." O.C.G.A. § 19-7-5(f). The statutory immunity to be applied here thus tracks the immunity Congress has both enacted as to federal laws and mandated that states enact if they want federal funding. Defendants thus do not ask the Court to "override" federal law, as Plaintiffs claim. [Doc. 32 at 6.] They would have the Court recognize federal law. And that necessary recognition bars *all* of Plaintiffs' claims here.

### C. Plaintiffs cannot overcome Defendants' statutory immunity.

With that put aside, Plaintiffs decline to offer any other argument which might avoid Defendants' statutory immunity. Their Complaint fails to plausibly allege any facts which would contest that Defendants and their employees made the relevant reports based on reasonable cause or in good faith. And their response declines to point to any allegations which might plausibly demonstrate a lack of good faith. Plaintiffs have thus failed to state a claim which might overcome Defendants' statutory immunity.

---

state laws that provide immunity for good faith reports of suspected child abuse." See 150 Cal. Rptr. 3d 735, 762 (Cal. Ct. App. 2012) (citing Thomas v. Chadwick, 274 Cal. Rptr. 128, 136-38 (Cal. Ct. App. 1990)). But the court held that California's immunity was inconsistent with that allowance because it provided *absolute* immunity for reports of suspected abuse, thus granting a broader immunity than Congress had embraced in § 5106a. For reasons explained in this reply, Georgia's statutory immunity does not have that problem, as it provides immunity for good faith reporting, rather than absolute immunity for all reporting.

Recent authority from Florida regarding that state's similar immunity statute (Fla. Stat. § 39.203), confirms that Defendants are entitled to immunity here. See generally Johns Hopkins All Children's Hospital, Inc. v. Kowalski, No. 2D2024-0382, 2025 WL 3019111 (Fla. Dist. Ct. App. Oct. 29, 2025). Like Georgia's statute, the Florida law provides immunity against "any civil or criminal liability" which might result from "participating in good faith" in proceedings related to suspected child abuse or "reporting in good faith any instance of child abuse." Fla. Stat. §39.203(1)(a).[3] In Kowalski, the Florida District Court of Appeals overturned a $261 million jury verdict against a hospital where a trial court had repeatedly erred by allowing the jury to hear upsetting evidence of conduct immunized by the statute, based on the trial court's too-narrow reading of the statute's immunity. See 2025 WL 3019111, at *10. More specifically, the trial court erred by limiting its immunity finding solely to "claims premised on or immediately resulting from" the hospital's reporting of suspected child abuse. Id. at *7-8.

This reading failed to "consider[ ] the entirety" of the statute, which also immunized the defendants' good faith *participation* in an investigation after a report was made. Id. at *8-10. In doing so, the trial court had allowed evidence of

---

[3] Confirming the statutes' similarity, Florida courts have looked to *Georgia* authority (the Georgia Supreme Court's decision in O'Heron, specifically) to interpret this immunity. See Urquhart v. Helmich, 947 So.2d 539, 542 (Fla. Dist. Ct. App. 2006) (citing O'Heron and calling Georgia statute "nearly identical").

13

defendants' participation in acts required by Florida' mandatory reporting statute to serve as a basis for liability and "permeate[ ] the entire trial." Id. at *10. That required reversal, as "nothing in the record suggest[ed] that [the hospital's required] participation . . . was not done in good faith." Id. at *8. The court then walked through several of the plaintiffs' claims, explaining that the defendants were entitled to directed verdicts in part due to their statutory immunity, as there was no evidence that they participated in the child abuse investigation in bad faith. Id. at *11-12, 14.

Here, Plaintiffs' Complaint contains no plausible allegations that Defendants acted in bad faith, either when their agents reported child abuse to the relevant authorities or through their participation in the investigation that followed. All of the conduct at issue here therefore falls within O.C.G.A. § 19-7-5's ambit. See O.C.G.A. § 19-7-5(f) (providing immunity for "the making of a report," "causing a report to be made," and "participating in any judicial proceeding or any other proceeding resulting" from a report).[4] And in the absence of any allegations that might plausibly demonstrate bad faith, Plaintiffs have failed to state a claim which could survive Defendants' statutory immunity. Plaintiffs' claims are barred.

---

[4] Federal statutory immunity under 34 U.S.C. § 20342 similarly applies to both the reporting itself and assistance in investigations or interventions pursuant to such a report. See 34 U.S.C. § 20342(1).

## CONCLUSION

The Court should dismiss Plaintiffs' claims against Defendants, either because Plaintiffs fail to plausibly plead those claims, the claims are time-barred, or the claims are barred by statutory immunity. Plaintiffs' response offers no authority or proper argument to rebut that conclusion. For the foregoing reasons and those in Defendants' original motion and memorandum, this court should dismiss all of Plaintiffs' claims against these Defendants.

This 1st day of December, 2025.

                                **HUFF, POWELL & BAILEY, LLC**

                                */s/ Taylor Tribble*
                                R. PAGE POWELL, JR.
                                GEORGIA BAR NO. 586696
                                JULYE JOHNS BAILEY
                                GEORGIA BAR NO. 394856
                                TAYLOR TRIBBLE
                                GEORGIA BAR NO. 904116
                                P. KYLE PERRY
                                GEORGIA BAR NO. 839444
                                SANDY BAILEY
                                GEORGIA BAR NO. 142591
                                ALEXANDER C. VEY

HUFF, POWELL & BAILEY, LLC     GEORGIA BAR NO. 307899
999 Peachtree Street, Suite 950
Atlanta, GA 30309                      *Counsel for Defendants STEPHANIE*
Telephone: (404) 892-4022         *V. BLANK CENTER FOR SAFE AND*
Fax: (404) 892-4033                  *HEALTHY CHILDREN, INC. AND*
                                         *CHILDREN'S HEALTHCARE OF*
                                         *ATLANTA, INC.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(B) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font and size requirements and is formatted in Times New Roman, 14-point font.

This 1st day of December, 2025.

**HUFF, POWELL & BAILEY, LLC**

*/s/ Taylor Tribble*
R. PAGE POWELL, JR.
GEORGIA BAR NO. 586696
JULYE JOHNS BAILEY
GEORGIA BAR NO. 394856
TAYLOR TRIBBLE
GEORGIA BAR NO. 904116
P. KYLE PERRY
GEORGIA BAR NO. 839444
ALEXANDER C. VEY
GEORGIA BAR NO. 307899

HUFF, POWELL & BAILEY, LLC
999 Peachtree Street, Suite 950
Atlanta, GA 30309
Telephone: (404) 892-4022
Fax: (404) 892-4033

*Counsel for Defendants STEPHANIE V. BLANK CENTER FOR SAFE AND HEALTHY CHILDREN, INC. AND CHILDREN'S HEALTHCARE OF ATLANTA, INC.*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW HERNANDEZ and WILAIRAT "TUCKEY" HERNANDEZ, | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:25-cv-04763-ELR |
| ADRIAN RICHARDS, Individually and in her Official Capacities as Georgia Dept. of Human Services and Director of the Georgia Dept. of Family and Children Services, et al., | ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day served a true and correct copy of the within and foregoing via e-file and serve to the following counsel of record:

Jordan Johnson, Esq.
Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA 30338
Alex@Justice.Law.com

Terry E. Williams, Esq.
Justin R. Techo, Esq.
Williams & Waymire, LLC
Bldg. 400, Suite A 4330 South Lee Street
Buford, GA 30518

17

terry@wmwlaw.com
justin@wmwlaw.com

Robert P. Monyak, Esq.
Peters & Monyak, LLP
2970 Clairmont Rd NE, Ste. 700
Atlanta, Georgia 30329
rmonyak@petersmonyak.com

Wade W. Herring, III, Esq.
Assistant Attorney General
Georgia Department of Law
40 Capital Square, SW
Atlanta, Georgia 30334
wherring@law.ga.gov

Timothy J. Buckley III, Esq.
Eric J. O'Brien, Esq.
Buckley Christopher & Hensel, P.C.
2970 Clairmont Road, NE, Suite 650
Atlanta, GA 30329
tbuckley@bchlawpc.com
eobrien@bchlawpc.com

The 1st day of December, 2025.

                                              **HUFF, POWELL & BAILEY, LLC**

                                              */s/ Taylor Tribble*
                                              R. PAGE POWELL, JR.
                                              GEORGIA BAR NO. 586696
                                              JULYE JOHNS BAILEY
                                              GEORGIA BAR NO. 394856
                                              TAYLOR TRIBBLE
                                              GEORGIA BAR NO. 904116
                                              P. KYLE PERRY
                                              GEORGIA BAR NO. 839444

                                                ALEXANDER C. VEY
                                                GEORGIA BAR NO. 307899

HUFF, POWELL & BAILEY, LLC     *Counsel for Defendants STEPHANIE*
999 Peachtree Street, Suite 950       *V. BLANK CENTER FOR SAFE AND*
Atlanta, GA 30309                             *HEALTHY CHILDREN, INC. AND*
Telephone: (404) 892-4022               *CHILDREN'S HEALTHCARE OF*
Fax: (404) 892-4033                           *ATLANTA, INC.*